EXHIBIT 1

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

| | |
|---|---|
| **D.A.** | * |
| | * |
| and | * |
| | * |
| **D.M.** | * |
| | * |
| and | * |
| | * |
| **JENNIFER GRAHAM** | * |
| 2910 Jennings Rd. | * |
| Kensington, MD 20895 | * |
| | * |
| and | * |
| | * |
| **A.M.** | * |
| | * |
| and | * |
| | * |
| **KEVIN BAXTER** | * |
| 1710 St. Paul St. | * |
| Baltimore, MD 21202 | * |
| | * |
| and | * |
| | * |
| **SHAD BABAN** | * |
| 1933 Dineen Dr. | * |
| Baltimore MD 21222 | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | *   Case No. _____ |
| | * |
| **LARRY HOGAN, in his official capacity as** | * |
| **GOVERNOR of the State of Maryland** | * |
| 100 State Circle | * |
| Annapolis, Maryland 21401 | * |
| | * |
| and | * |
| | * |

RECEIVED

JUN 3 0 2021

CIRCUIT COURT
FOR BALTIMORE CITY

**TIFFANY ROBINSON**, in her official          *
capacity as Secretary of the                       *
**Maryland Department of Labor**              *
500 North Calvert Street, Suite 401            *
Baltimore, Maryland 21202                       *
                                                                    *
                                                                    *
          Defendants.                                     *
                                                                    *

*     *     *     *     *     *     *     *     *     *     *     *     *     *

## COMPLAINT

Plaintiffs D.A, D.M., Jennifer Graham, A.M., Kevin Baxter, and Shad Baban

("Plaintiffs"), by their undersigned counsel, hereby sue Defendants Governor Larry Hogan

("Governor Hogan") and Maryland Labor Secretary Tiffany Robinson ("Secretary Robinson"),

and allege, upon knowledge to themselves and upon information and belief as to all other

matters, as follows:

## INTRODUCTION

1.      Plaintiffs initiate this action against Governor Hogan and Secretary Robinson for

violating statutory and state constitutional obligations regarding unemployment insurance

benefits.

2.      This action arises out of the State of Maryland's refusal to ensure continued

access to federal unemployment benefits offered through the Coronavirus Aid, Relief, and

Economic Security ("CARES") Act to over 300,000 Maryland workers, including Plaintiffs.

3.      The essential benefits provided by the CARES Act include Pandemic

Unemployment Assistance ("PUA"), for workers not otherwise eligible for regular

unemployment benefits; Pandemic Emergency Unemployment Compensation ("PEUC"), which

extends regular unemployment benefits for workers who have exhausted them; and Federal

Pandemic Unemployment Compensation ("FPUC"), which has increased the amount of

2

unemployment benefits that recipients receive each week.  PUA, PEUC, and FPUC are available through September 6, 2021 under federal law.

4.      These benefits have served as a vital lifeline for hundreds of thousands of Marylanders during a time of unprecedented economic hardship caused by the COVID-19 pandemic.  By terminating the State's administration of these benefits prematurely, the State has violated the General Assembly's clear directive to maximize unemployment benefits available to eligible Maryland residents and violated the Maryland Constitution.  With its unlawful action, the State is unnecessarily and prematurely cutting a lifeline for struggling Marylanders and risks plunging tens of thousands of Maryland citizens into housing instability as well as severe emotional and economic crisis.  If the Court does not enjoin the State's withdrawal from unemployment benefits offered through the CARES Act, Plaintiffs will suffer immediate, substantial, and irreparable injury.

5.      Plaintiffs seek injunctive relief and a declaratory judgment that Defendants' early termination of PUA, PEUC, and FPUC violates Title 8 of the Maryland Labor and Employment Article and Article 24 of the Maryland Declaration of Rights.

## JURISDICTION

6.      This Court has jurisdiction over the subject matter of this action pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 1-501, 3-403, and 3-8B-01.

7.      This Court has jurisdiction over Defendants Governor Hogan and Secretary Robinson pursuant to Md. Code. Ann., Cts. & Jud. Proc. § 6-102 as they regularly conduct business of the State of Maryland and, in particular, in Annapolis and Baltimore City.

8.      This Court has venue pursuant to Md. Code. Ann., Cts. & Jud. Proc. § 6-201.

## PARTIES

9.      Plaintiff D.A.[1] is a resident of Baltimore City, Maryland.

10.     D.A. worked as a chef for two years before being laid off in March 2020 due to the COVID-19 pandemic.

11.     D.A. currently receives $389 per week in PEUC (Pandemic Emergency Unemployment Compensation) and $300 in FPUC (Federal Pandemic Unemployment Compensation), which she uses for housing and necessities for her and her family.

12.     Despite searching for suitable and stable work, D.A. only found one temporary position that expired in January of 2021, and she currently stands to lose all benefits after the week ending July 3, 2021.

13.     Without the federal coronavirus unemployment benefits, D.A. and her family will likely lose their home and be forced to live in an overcrowded situation with relatives until D.A. can find suitable work.

14.     D.A. has submitted an affidavit swearing to the allegations set forth in paragraphs 9 through 13.

15.     Plaintiff D.M. is a resident of Baltimore City, Maryland.

16.     D.M. is a freelance production worker who worked on media production sets before the COVID-19 pandemic.  He currently receives $300 per week in FPUC, and $243 in PUA (Pandemic Unemployment Assistance), which he uses to pay for his housing, food, cell phone and other expenses.

---

[1] Three plaintiffs, D.A., D.M. and A.M., are identified by initials only to "protect [] from harassment, injury, ridicule or personal embarrassment."  Doe v. Shady Grove Adventist Hosp., 89 Md. App. 351, 363-64 (1991) (quoting United States v. Doe, 655 F.2d 920, 922 n. 1 (9th Cir.1980)).

17.     D.M. has been unable to find production work and currently stands to lose all benefits after the week ending July 3, 2021.

18.     Without the federal coronavirus unemployment benefits, D.M. will be unable to cover rent at his sober living house, which is part of his recovery from addiction.  He will be forced to find other living arrangements and will be at serious risk of relapse.

19.     D.M. has submitted an affidavit swearing to the allegations set forth in paragraphs 15 through 18.

20.     Plaintiff Jennifer Graham is a resident of Montgomery County, Maryland.

21.     Plaintiff Graham is a massage therapist who, before the COVID-19 pandemic, practiced massage therapy for 12 years and managed her own practice. She shut down her business due to the pandemic and applied for unemployment insurance for the first time in her life last March of 2020.

22.     Ms. Graham receives $176 per week in PUA and $300 per week in FPUC, which she used to cover rent and necessities.  She was depending on receiving benefits through early September and had budgeted to be able to reopen her business at that time.

23.     Ms. Graham stands to lose all benefits after the week ending July 3, 2021.

24.     Without the federal coronavirus unemployment benefits, Mr. Graham will likely lose her apartment, and she will suffer from exacerbated post-traumatic stress disorder and clinical depression.

25.     Ms. Graham has submitted an affidavit swearing to the allegations set forth in paragraphs 20 through 24.

26.     Plaintiff A.M. is a 64 year-old resident of Baltimore City.

27.     A.M. worked for forty years as a Dining Room Attendant at Bon Appétit at Johns Hopkins University.  He was laid off in May of 2021 when the dining room closed.

28.     A.M. currently receives $430 in regular UI and $300 in FPUC, which he and his wife use to cover necessities such as their mortgage, food, and necessary medications.

29.     A.M. has been unable to find work with comparable pay and benefits, though his employer has indicated he may be rehired later in the summer.

30.     A.M. stands to lose his FPUC benefits after the week ending July 3, 2021.

31.     Without the federal coronavirus unemployment benefits, A.M. and his wife will be unable to pay their mortgage and may lose the home they have lived in for twenty years.  Mr. Mitchell also suffers from diabetes and high blood pressure and will be unable to pay for his prescriptions, which will cause serious health consequences.

32.     A.M. has submitted an affidavit swearing to the allegations set forth in paragraphs 26 through 31.

33.     Plaintiff Kevin Baxter is a resident of Baltimore City, Maryland.

34.     Mr. Baxter worked in a hotel cafeteria for thirteen years before being laid off in March 2020 due to the COVID-19 pandemic.

35.     He currently receives $321 PEUC benefits per week and $300 in FPUC, which he uses to pay for rent, public transportation, and utilities.

36.     Mr. Baxter has been unable to find work of comparable pay and benefits to what he had been earning, and his employer has not yet offered him re-employment.  He stands to lose all benefits after the week ending July 3, 2021.

37.     Without the federal coronavirus unemployment benefits, Mr. Baxter will lose his cell phone and transportation money, making it more difficult to find work, and increasing his feelings of depression and anxiety.

38.     Mr. Baxter has submitted an affidavit swearing to the allegations set forth in paragraphs 33 through 37.

39.     Plaintiff Shad Baban is a resident of Baltimore County, Maryland.

40.     He was employed as a cook for several years until he was laid off in March of 2020 due to the COVID-19 pandemic.  Since exhausting regular unemployment insurance benefits, he has been receiving PEUC.

41.     After exhausting his regular unemployment insurance benefits, Mr. Baban now receives PEUC and FPUC of $514 per week in total, which he uses for rent, food, transportation, and formula for his nine-month-old daughter.

42.     Mr. Baban is the sole breadwinner for his family and has been unable to find suitable employment despite actively seeking work.  He stands to lose all benefits after the week ending July 3, 2021.

43.     Without the federal coronavirus unemployment benefits, Mr. Baban and his family will lose their home and car, making it more difficult for him to find employment.  Mr. Baban suffers anxiety and insomnia as a result of the decision to terminate federal benefits early.

44.     Mr. Baban has submitted an affidavit swearing to the allegations set forth in paragraphs 39 through 43.

45.     Defendant Larry Hogan is being sued in his official capacity as Governor of the State of Maryland.  Governor Hogan maintains a place of business at 100 State Circle, Annapolis, Maryland 21401.

46.     Defendant Tiffany Robinson is Secretary of the Maryland Department of Labor, and she is named in her official capacity.  Secretary Robinson maintains a place of business at 500 North Calvert Street, Baltimore, Maryland 21202.

## STATEMENT OF FACTS

### Maryland's Participation in CARES Act Federal Unemployment Benefits

47.     Since March of 2020, the United States has experienced an unprecedented public health crisis due to the COVID-19 pandemic.  The pandemic resulted in mass layoffs and business closures across the United States and the State of Maryland.

48.     As a result of the pandemic, unemployment in the United States reached its highest level since the Great Depression.[2]

49.     As a response to the economic effects of the pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which was signed into law on March 27, 2020.  This law is codified as 15 U.S.C. § 9001, *et seq.*

50.     The CARES Act temporarily enhances unemployment insurance ("UI") payments by establishing the following benefits:

---

[2] See U.S. Bureau of Labor Statistics, Seasonally Adjusted Unemployment Rate Data https://data.bls.gov/timeseries/LNS14000000?years_option=all_years (last visited June 29, 2021) (unemployment rate of 14.8% for April 2020, the highest of any year for which the Bureau reports seasonally adjusted unemployment data); Kimberly Amadeo, Unemployment Rate by Year Since 1929 Compared to Inflation and GDP, The Balance, https://www.thebalance.com/unemployment-rate-by-year-3305506 (March 16, 2021) (citing Bureau of Labor Statistics, Labor Force, Employment, and Unemployment, 1929-39: Estimating Methods, Page 2, Table 1, https://www.bls.gov/opub/mlr/1948/article/pdf/labor-force-employment-and-unemployment-1929-39-estimating-methods.pdf (July 1948)) (Great Depression unemployment rate peaked at 24.9% and has remained below 14% since 1941).

   a. Pandemic Unemployment Assistance ("PUA") for workers who were not eligible for regular unemployment benefits and whose unemployment was caused by COVID-19.[3]

   b. Pandemic Emergency Unemployment Compensation ("PEUC"), which extends regular unemployment compensation benefits ("UI") for workers who had exhausted UI benefits.[4]

   c. Federal Pandemic Unemployment Compensation ("FPUC"), which increased the amount of UI benefits by $600-per-week from March 27, 2020, through July 31, 2020.[5]

51. PUA, PEUC, and FPUC are funded by and conferred under 42 U.S.C. §§ 1101, 1104, and 1105.[6]

52. On December 26, 2020, the unemployment provisions in the CARES Act, including PUA and PEUC, were extended through March 14, 2021, by the Continued Assistance for Unemployed Workers Act of 2020 ("CAUWA").  Pub. L. No. 116-260, § 200–01, 206.  CAUWA reauthorized FPUC in the amount of $300 per week, payable from December 26, 2020, through March 14, 2021.  Pub. L. No. 116-260, § 203.

---

[3] 15 U.S.C. § 9021.

[4] 15 U.S.C. § 9025.

[5] 15 U.S.C. § 9023.  FPUC is also included in the "weekly benefit amount" under PUA and PEUC. 15 U.S.C. § 9021(d)(1); 15 U.S.C. § 9025(a)(4)(A).

[6] The PUA benefits, including FPUC and administration costs, are funded by 42 U.S.C. §§ 1104(a) and 1105(a). 15 U.S.C. § 9021(g).  The PEUC benefits, including FPUC, are funded by 42 U.S.C. §§ 1104(a) and 1105(a), while PEUC administration costs are funded by 42 U.S.C. § 1101(a). 15 U.S.C. § 9025(d).

53.     On March 11, 2021, PUA, PEUC, and FPUC were extended through September 6, 2021, by the American Rescue Plan Act of 2021 ("ARPA").  Pub. L. No. 117-2, § 9011, 9013, 9016.

54.     Funds have been appropriated by Congress and are available in the Unemployment Trust Fund to be received by eligible Marylanders through the September 6 expiration of PUA, PEUC, and FPUC.

55.     The CARES Act requires the U.S. Secretary of Labor to provide PUA benefits, including FPUC, through agreements with the states.  15 U.S.C. § 9021(b).  PEUC benefits, including FPUC, are also administered through agreements between the states and the federal government.  15 U.S.C. §§ 9023(a), 9025(a).

56.     On March 28, 2020, one day after the CARES Act became law, the Maryland Department of Labor entered into an agreement with the U.S. Department of Labor on behalf of the State of Maryland, accepting all PUA, PEUC, and FPUC benefits for eligible claimants.

57.     The Unemployment Insurance Division of the Maryland Department of Labor (the "Division") processes individual claims for unemployment insurance and distributes payment to eligible individuals.  Md. Code Ann., Lab. & Empl. §§ 8-302 and 8-901.

58.     The Division was and is responsible for distributing federal PUA, PEUC, and FPUC money and processing claims through the BEACON system.  The Division encouraged new claimants to enroll through the BEACON online application.

59.     Hundreds of thousands of Maryland residents are entitled to receive and have been receiving PUA, PEUC, and FPUC benefits since March 2020.

60.     Plaintiff D.A. is eligible for FPUC and PEUC benefits under 15 U.S.C. §§ 9023, 9025.

61.     Plaintiff D.M. is eligible for PUA and FPUC benefits under 15 U.S.C. §§ 9021, 9023.

62.     Plaintiff Jennifer Graham is eligible for PUA and FPUC benefits under 15 U.S.C. §§ 9021, 9023.

63.     Plaintiff A.M. is eligible for FPUC benefits under 15 U.S.C. § 9023.

64.     Plaintiff Kevin Baxter is eligible for FPUC and PEUC benefits under 15 U.S.C. §§ 9023, 9025.

65.     Plaintiff Shad Baban is eligible for FPUC and PEUC benefits under 15 U.S.C. §§ 9023, 9025.

### Defendants Prematurely Terminate Receipt of Federal Unemployment Benefits In Contravention Of Their Statutory and Constitutional Obligations

66.     On June 1, 2021, Governor Hogan notified the U.S. Secretary of Labor that Maryland would be ending its participation in PUA, PEUC, and FPUC benefits on July 3, 2021, more than two months prior to the federal expiration of these benefits.[7]  Governor Hogan also announced his decision publicly on June 1, 2021.

67.     The decision to end prematurely the receipt of federal benefits contravenes Title 8 of the Maryland Code, Labor and Employment Article ("Title 8"), which governs Maryland's Unemployment Insurance program.

68.     In Subtitle 1 to Title 8, the Maryland General Assembly made legislative findings about the grave economic, health, and welfare dangers posed by unemployment, concluding that "economic insecurity due to unemployment is a serious menace to health, morals, and welfare of the people of [Maryland]; involuntary unemployment is a subject of general interest and concern

---

[7] The letter also provided notice that Maryland would be ending the State's participation in the Mixed Earners Unemployment Compensation ("MEUC") benefits program.

that requires appropriate action by the General Assembly to prevent the spread of involuntary unemployment and to lighten its burden, which often falls with crushing force on the unemployed worker and the family of the unemployed worker; the achievement of security for society requires protection against involuntary unemployment, which is the greatest hazard of our economic lives; and security for society can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment. . . ."  Md. Code Ann., Lab. & Empl. § 8-102(b).

69.     The Maryland General Assembly further articulated its clear policy conclusion that "the public good and the general welfare of the citizens of the State require the enactment of [Title 8], under the police powers of the State, for the compulsory setting aside of unemployment reserves to be used for the benefit of individuals unemployed through no fault of their own." Md. Code Ann., Lab. & Empl. § 8-102(c).

70.     These factual findings and policy statements by the General Assembly guide the interpretation and application of the remainder of Title 8.  Md. Code Ann., Lab. & Empl. § 8-102(a).

71.     The General Assembly assigned to the Maryland Secretary of Labor the duty to administer the Unemployment Insurance Fund, from which unemployment benefits are paid to eligible recipients.  See Md. Code. Ann., Lab. & Empl. § 8-402.

72.     In administering the Unemployment Insurance Fund as Title 8 requires her to do, Secretary Robinson is required to coordinate with federal agencies to further the public policy articulated by the General Assembly.  Per Md. Code Ann., Lab. & Empl. § 8-310(a)(1),

Secretary Robinson is required to "cooperate with the United States Secretary of Labor *to the fullest extent that [Title 8] allows*." (emphasis added).

73.     The Secretary's cooperation requires accepting federal UI funds.  In setting forth the origin of the funds that are to make up the Unemployment Insurance Fund, Title 8 directs that "[t]he Unemployment Insurance Fund shall consist of: . . . (6) money received from the Federal Unemployment Account in the Unemployment Trust Fund in Accordance with Title XII of the Social Security Act; (7) money credited to the State Unemployment Trust Fund Account under § 903 of the Social Security Act; and (8) money received for the Fund from any other source." Md. Code. Ann., Lab. & Empl. § 8-403(a).

74.     The "Unemployment Trust Fund" referenced in § 8-403(a) is governed by 42 U.S.C. § 1104, which funds PUA and PEUC benefits.  This section also establishes the creation of a "separate book account," which is further described in 42 U.S.C. § 1105, the source of FPUC funding.[8]

75.     Title 8 thus makes clear that Secretary Robinson has a statutorily-imposed duty to accept federal funds into the Maryland Unemployment Insurance Fund, including CARES Act funds.

76.     In order to effectuate the remedial purpose of the statute, the Secretary's obligation to "cooperate with the U.S. Secretary of Labor *to the fullest extent that [Title 8] allows*" must be read as requiring the receipt of *all* federal UI funds made available to Marylanders by the federal government under 42 U.S.C. §§ 1101, 1104, and 1105.  Rejecting

---

[8] The CARES Act Benefits are funded by federal unemployment programs established under 42 U.S.C. §§ 1101(a), 1104(a), and 1105(a).   Specifically, PUA benefits, including FPUC and administration costs, are funded by 42 U.S.C. §§ 1104(a) and 1105(a).  *See* 15 U.S.C. § 9021(g).  PEUC benefits, including FPUC, are funded by 42 U.S.C. §§ 1104(a) and 1105(a), while PEUC administration costs are funded by 42 U.S.C. § 1101(a).  *See* 15 U.S.C. § 9025(d).

available funds would constitute a lesser degree of cooperation than Title 8 allows.  Thus, Title 8 requires the Secretary to accept federal funding administered pursuant to the CARES Act.

77.     The Governor "shall take care that the Laws are faithfully executed."  Md. Const. art. II, § 9.  This Constitutional provision is meant to ensure that the Governor cannot contravene the statutory duties imposed upon his appointees or other elected officials.

78.     By terminating Maryland's participation in PUA, PEUC, and FPUC benefits conferred under 42 U.S.C. §§ 1101, 1104, and 1105, Defendants are violating their statutory and constitutional duties to secure such benefits for hundreds of thousands of eligible individuals in the State, including Plaintiffs.

**The Devastating Impact of the Defendants' Unlawful Early Termination Decision**

79.     If PUA, PEUC, and FPUC benefits are terminated early in Maryland, Plaintiffs D.A., D.M. Graham, A.M., Baxter, and Baban will be unable to cover basic living expenses including housing, utilities, food, transportation, and medical treatment.  Some of these expenses, such as transportation, are necessary to obtaining and maintaining employment.

80.     As of May 29, 2021, 304,013 Marylanders were receiving some form of unemployment benefits.[9]

81.     If PUA, PEUC, and FPUC benefits are terminated early in Maryland:

a.     84.7% of all people currently receiving some form of UI (or 257,477 people) will be left with no unemployment assistance at all.  This includes 178,090 PUA recipients and 79,387 PEUC recipients.

---

[9] National Employment Law Project, 4.7 Million Workers Face Premature Cutoff of Pandemic Unemployment Programs (June 23, 2021), https://www.nelp.org/publication/4-7-million-workers-face-premature-cutoff-of-pandemic-unemployment-programs/, with report data available at https://s27147.pcdn.co/wp-content/uploads/6-22-21-CC-CutoffStatesData-withBIPOC.pdf (reflecting data for week ending May 29, 2021).

      b.    46,522 regular state UI recipients will have their weekly benefits cut by $300 per week due to the cutoff of the FPUC supplement.

      c.    Black, indigenous, and other people of color, who make up 58.7% of UI recipients in Maryland, will be disproportionately impacted.[10]

      d.    The state economy will be deprived of $1.9 billion in federal assistance that would otherwise help businesses reopen and create jobs.[11]

      e.    Hundreds of thousands of Marylanders will be deprived of a life-sustaining bridge to full-time employment.

      f.    Many Maryland families will lose their homes.

82.    Contrary to Governor Hogan's rationale for terminating federal UI benefits early, studies[12] have found no evidence that current UI benefits have driven job losses or slowed rehiring during the past year.

---

[10] Id.

[11] Andrew Stettner, Fact Sheet:  What's at Stake As States Cancel Federal Unemployment Benefits, The Century Foundation (May 13, 2021), https://tcf.org/content/commentary/fact-sheet-whats-stake-states-cancel-federal-unemployment-benefits/.

[12] See, e.g., Alexander W. Bartik et. al., Measuring the labor market at the onset of the COVID-19 crisis, National Bureau of Economic Research, Working Paper Series (July 2020), http://www.nber.org/papers/w27613; Emily Stewart, America's cruel unemployment experiment: Cutting off unemployment insurance early is all politics, not economics, Vox (June 7, 2021, 10:34 am EDT), https://www.vox.com/policy-and-politics/2021/6/3/22465160/states-ending-unemployment-labor-shortage-texas; Josh Bivens & Heidi Shierholz, Restaurant labor shortages show little sign of going economywide: Policymakers must not rein in stimulus or unemployment benefits, Economic Policy Institute (May 11, 2021, 4:10 pm), https://www.epi.org/blog/restaurant-labor-shortages-show-little-sign-of-going-economywide-policymakers-must-not-rein-in-stimulus-or-unemployment-benefits/.

## CAUSES OF ACTION

### Count I – Declaratory Judgment – Title 8 of the
### Maryland Labor & Employment Article

83.   Plaintiffs reallege and incorporate paragraphs 1 through 82.

84.   There exists an actual controversy of a justiciable issue between Plaintiffs and

Defendants within the meaning of the Maryland Uniform Declaratory Judgment Act, Md. Cts. &

Jud. Proc. Code § 3-409(a)(1).  Specifically, the justiciable issue is whether, under Title 8 of the

Maryland Code on Labor and Unemployment and the Maryland Constitution, Defendants are

required to secure all possible federal pandemic UI benefits available to unemployed

Marylanders conferred under 42 U.S.C. §§ 1101, 1104, and 1105.

85.   Plaintiffs and Defendants hold antagonistic claims that can only be resolved by a

declaratory judgment.

86.   A declaratory judgment by this Court will terminate this controversy and will

establish Plaintiffs' and Defendants' uncertain legal rights with regard to early termination of the

federal CARES Act UI benefits.

WHEREFORE, Plaintiffs request that the Court enter a declaratory judgment: (i) finding

and declaring that Defendants' early termination of federal pandemic UI benefits is invalid and

of no force or effect because it violates Md. Code Ann., Lab. & Empl. § 8-101 *et seq*. and the

Constitution of the State of Maryland; (ii) finding and declaring that Plaintiffs are entitled to

federal pandemic UI benefits through September 6, 2021; (iii) awarding costs, as provided by

law; and (iv) granting Plaintiffs such further relief as the Court deems just and appropriate.

### Count II – Declaratory Judgment – Article 24 of the
### Maryland Declaration of Rights

87.   Plaintiffs reallege and incorporate paragraphs 1 through 86.

88.     There exists an actual controversy of a justiciable issue between Plaintiffs and Defendants within the meaning of the Maryland Uniform Declaratory Judgment Act, Md. Cts. & Jud. Proc. Code § 3-409(a)(1).  Specifically, the justiciable issue is whether Defendants have violated Article 24 of the Maryland Declaration of Rights by eliminating all unemployment assistance for 85% of the Marylanders who currently receive any type of UI benefits, where those 85% are receiving only the federally-funded CARES Act benefits.  Rejecting aid for 85% of Marylanders eligible for UI benefits, while permitting benefits to continue to flow to the remaining 15%, has no rational basis and is therefore unconstitutional.

89.     Plaintiffs and Defendants hold antagonistic claims that can only be resolved by a declaratory judgment.

90.     A declaratory judgment by this Court will terminate this controversy and will establish Plaintiffs' and Defendants' uncertain legal rights with regard to early termination of the federal CARES Act UI benefits.

WHEREFORE, Plaintiffs request that the Court enter a declaratory judgment: (i) finding and declaring that Defendants' termination of all UI benefits for 85% of all UI recipients is a violation of Plaintiffs' rights under Article 24 of the Maryland Declaration of Rights; (ii) finding and declaring that Plaintiffs are entitled to federal pandemic UI benefits through September 6, 2021; (iii) awarding costs, as provided by law; and (iv) granting Plaintiffs such further relief as the Court deems just and appropriate.

## Count III – Injunctive Relief

91.     Plaintiffs reallege and incorporate paragraphs 1 through 90.

92.     The actions of Defendants demonstrate their intention to terminate federal UI

benefits conferred under the CARES Act on July 3, 2021, more than two months prior to the

September 6, 2021 expiration of those benefits.

93.     Should Defendants succeed in terminating these benefits more than two months

early, Plaintiffs will suffer immediate, substantial, and irreparable harms for which they have no

adequate remedy at law.  These harms, including, *inter alia*, a loss of housing or medical care

and the inability to access food and transportation, constitute irreparable harm pending resolution

of this action and are not adequately compensable by an award of damages.

94.     Nor can delayed payment of benefits now due as a result of the ultimate

conclusion of this controversy on the merits adequately compensate for the immediate and dire

consequences the Plaintiffs face.

95.     Plaintiffs are likely to succeed on the merits.

96.     The balance of harms favors Plaintiffs.  Continuing payment of federal pandemic

UI benefits to Marylanders until September 6 maintains the status quo.  These funds have already

been appropriated by Congress and are available in the Unemployment Trust Fund to be received

by eligible Marylanders.  15 U.S.C. § 9021(g)(1)(B); 15 U.S.C. § 9023(d)(3); 15 U.S.C.

§9025(d)(1)(B).  Continuing to allow access to these benefits "favors the status quo as they have

been available in their current form since December 27, 2020, or roughly 6 months."[13]  The

State's costs to administer the CARES Act Benefits are covered by CARES Act Funding.  15

U.S.C. §§ 9021(g), 9023(d), 9025(a)(4)(A).  Therefore, the State is neither harmed nor

---

[13] See T.L. v. Holcomb, Marion Superior Court, Cause No.: 49D11-2106-PL-020140,
Mem. Op. (June 25, 2021).

inconvenienced by continued distribution of CARES Act benefits until September.  The harm to Plaintiffs created by the loss of benefits far outweighs any inconvenience to the state.

97.     Enjoining the State from terminating federally-funded UI benefits needed by eligible Marylanders like Plaintiffs is not contrary to the public interest.

WHEREFORE, Plaintiffs request that the Court:

(1)  enter a temporary restraining order and preliminary injunction:

(a)  Requiring Governor Hogan to rescind his letter of June 1, 2021, providing notice of the State's termination of its participation in PUA, PEUC, and FPUC benefits;

(b)  Enjoining Governor Hogan and Secretary Robinson, their officers, employees, and agents, all persons acting in concert or participation with any Defendant, or under any Defendant's supervision, direction, or control, from withdrawing the State of Maryland from unemployment benefits offered through the CARES Act;

(c)  Ordering Governor Hogan and Secretary Robinson, on behalf of the State of Maryland, to immediately notify the U.S. Department of Labor of the State's continued participation in the CARES Act programs for the duration of those programs.

(2)  enter a Permanent Injunction that enjoins Defendants from terminating the federal pandemic UI benefits before September 6, 2021.

Respectfully submitted,

**GALLAGHER EVELIUS & JONES LLP**


 /s/ Paul S. Caiola
Paul S. Caiola, CPF # 9512120109
Meghan K. Casey CPF # 1506090003
Hannah Logue Perng CPF # 1412170166
218 North Charles Street, Suite 400
Baltimore, Maryland  21201
Telephone: (410) 727-7702
Facsimile: (410) 468-2786
pcaiola@gejlaw.com
mcasey@gejlaw.com
hperng@gejlaw.com

**PUBLIC JUSTICE CENTER**


 /s/ Sally Dworak-Fisher
Sally Dworak-Fisher, CPF # 0312220001
Debra L. Gardner, CPF # 8509010013
Monisha Cherayil, CPF # 0909020002
Tyra M. Robinson, CPF # 1912180113
201 North Charles Street, Suite 1200
Baltimore, Maryland  21201
Telephone: (410) 625-9409
Facsimile: (410) 625-9423
dworak-fishers@publicjustice.org
gardnerd@publicjustice.org
cherayilm@publicjustice.org
robinsont@publicjustice.org.


*Attorneys for Plaintiffs*

Dated: June 30, 2021